IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| LORD CORPORATION, | Civil Action No. 5:09-cv-205-D |
| Plaintiff, | |
| vs. | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS** |
| S&B TECHNICAL PRODUCTS, INC., TERRAMIX, S.A., and MARK A. WEIH, | |
| Defendants. | |

Defendants S&B Technical Products, Inc. ("S&B"), Terramix, S.A. ("Terramix"), and Mark A. Weih ("Weih") (collectively "Defendants") respectfully submit this Response in Opposition to Plaintiff LORD Corporation's Motion for Sanctions.

## NATURE OF THE MATTER BEFORE THE COURT

The matter is before the court on an attempt by Plaintiff LORD Corporation ("LORD") to manufacture a crisis for the purposes of obfuscating their wrongdoing and obtaining amendment of the current scheduling order of the court. LORD's motion for sanctions is nothing more than a poorly disguised "get out of jail free" card, which they hope to use to avoid liability for supplying Terramix with defective products that caused in excess of $16 million in damages to Terramix. Relying upon arguments that are riddled with procedural and substantive defects, LORD moves this Court to take the drastic measure of striking the report of the forensic accountant, who Terramix employed to analyze and calculate the damages that LORD caused. LORD erroneously seeks an order from this Court that would:

- have this Court treat timely served *initial* disclosures as *final* disclosures in an effort to prevent further discovery, including expert discovery, in this case;

- bar Defendants from supplementing their timely served responses to interrogatories and requests for production of documents *during the discovery period*, months before any dispositive motions are due, and before a trial of the action has been set by the court;

- preclude testimony from being updated or revisited during an ongoing corporate deposition involving numerous topics;

- prevent properly qualified and timely disclosed expert witnesses from contributing information that is relevant to the case; and

- curtail an adverse party's right to develop its case during the discovery period through excessive letter writing campaigns.

In pursuit of these improper results, LORD mischaracterizes and misconstrues the discovery process in this case and makes arguments that are inconsistent with the letter and spirit of the Federal Rules of Civil Procedure.

## RESTATEMENT OF FACTS

On August 16, 2010, Terramix timely disclosed Steven J. Hazel as an expert witness on the calculation of Terramix's damages on its counterclaims for LORD's misconduct. At the time of this disclosure, there were two-and-one-half months remaining in the discovery period. Rather than make use of that time and conduct expert discovery, LORD spent the next two weeks concocting a frivolous motion for sanctions, and has spent the weeks since filing the frivolous motion for sanctions instead of noticing additional fact or expert depositions, or completing certain depositions that have been held open. In addition to the legal problems addressed below, LORD's Motion for Sanctions is premised upon a putative statement of the facts that contains numerous, material misstatements and inaccuracies designed to create the appearance of a legitimate and exigent problem. An examination of the facts, in context, demonstrates the unfounded and over-reaching nature of LORD's Motion for Sanctions. Those facts, in context, are as follows:

*Terramix's Counterclaims.* During the early hours of Saturday, May 9, 2009, LORD filed the present lawsuit against S&B, Terramix, and Weih. (Compl., D.E. 1) The timing of LORD's filing was no accident. LORD brought this lawsuit in North Carolina to avoid what LORD perceived to be the possibility that it would be sued by Terramix in Costa Rica, where LORD had delivered to Terramix certain defective rubber-to-metal bonding products that caused severe corrosion on Terramix's core products, rubber/metal gaskets. On April 8, 2009, LORD and Terramix executed a Memorandum of Agreement in which they agreed that neither party would bring a lawsuit for thirty days while the parties attempted to resolve the dispute caused by LORD's defective products. (See Rebuttal Declaration of

2

Joseph W. Marotta, Exh. A [D.E. 60-2])  Stated differently:  LORD filed suit here to avoid what it perceived to be the possibility of having to defend against Terramix's claims in Costa Rica.

Lord contends that "Terramix filed counterclaims [in this action] based on an unrelated set of events concerning two sets of LORD primers and adhesives used by Terramix."  (Mem. Supp. Mot. Sanctions, at p. 2 [D.E. 256]).  If this "set of events" truly is unrelated in Lord's view, it is curious that LORD recited information related to them in their Corrected First Amended Complaint:

> 28.     Separately, in or about 2001 LORD began selling the MetalJacket adhesive product to Terramix. The MetalJacket product was manufactured by LORD and shipped directly to Terramix in Costa Rica. LORD sold the MetalJacket product to Terramix from 1999 through the fourth quarter of 2008, when Terramix ceased purchasing the product from LORD.
>
> . . . .
>
> 32.     Immediately upon leaving his employment with LORD, Weih began employment with Terramix. In fact, Weih's departure from LORD occurred following Weih's negotiation of a marketing agreement on behalf of LORD with S&B concerning the sale of MetalJacket products to S&B.
>
> 33.     At Terramix, Weih became Terramix's Supervisor managing the production and application of the MetalJacket product to the pipes and gaskets manufactured at Terramix's facility in Costa Rica. Weih also was named the "President" of AquaArmor, Inc., an affiliated company of S&B that purchased the MetalJacket product from LORD and coated parts for third parties.

**THE PARTIES' DISPUTE CONCERNING CORROSION PROBLEMS AT TERRAMIX'S COSTA RICA FACILITY**

> 34.     Around the time Weih commenced employment with Terramix, Terramix starting using a particular combination of the LORD MetalJacket and Chemlok adhesives at its pipe manufacturing facility in Costa Rica. Specifically, Terramix had begun to use one of the LORD MetalJacket products as a primer, and one of the LORD Chemlok products as an adhesive. Terramix bought these products from LORD pursuant to a contract between LORD and Terramix's affiliate, S&B.
>
> 35.     Subsequently, Terramix alleged that some gaskets it manufactured using a particular combination of the MetalJacket and Chemlok products showed signs of corrosion. A dispute arose between Terramix and LORD as to the cause of the corrosion. LORD offered to send representatives to Terramix's facility in Costa Rica to investigate the issue, but Terramix declined this offer and declined to provide any information to LORD to allow it to investigate the source or cause of the corrosion.[1]

---

[1] LORD's internal documents, uncovered during the course of discovery, show that the allegations of Paragraph 35 of LORD's Complaint are false.  Those documents establish that LORD actually conducted an investigation, including obtaining significant information and data from Terramix, which (among other

36.    In June 2007, Terramix demanded that LORD refund to Terramix the costs of unopened MetalJacket product it had purchased from LORD. LORD declined to issue a refund before having the opportunity to investigate and determine the cause of the corrosion on Terramix's gaskets.

(Corrected 1st Am. Compl., ¶¶ 28, 32-36 [D.E. 25]; *see also* Dec.of Edward C. Gustin II, p. 6-7 [D.E. 7] and Dec.of John E. Hill, ¶¶ 5-8, 11 [D.E. 59] (discussing counterclaim issues months before the counterclaims were filed)).  Further, LORD's putative eighth cause of action is a $116,000 collection claim related to alleged non-payment for the defective products supplied by LORD.

As LORD expected when it made the preemptive filing of its putative trade secret misappropriation, unfair competition, trademark infringement and related claims, Terramix counterclaimed for the real misconduct – by LORD – that is at the core of the parties' dispute. Specifically, on August 19, 2009, Terramix filed counterclaims against LORD for breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.[2] (Defs.' Ans., Aff. Defenses, & Terramix Counterclaim [D.E. 101]).

LORD seeks to imply otherwise, but only Terramix filed counterclaims against LORD.  It was LORD's contractual relationship with Terramix that was breached.   The basis for Terramix's counterclaims against LORD are that LORD warranted that two metal-to-rubber adhesive systems manufactured by LORD, MetalJacket 1150/Chemlok 8210 and MetalJacket 1162/Metal Jacket 3200, would adhere rubber to metal and would resist corrosion after use in the environments for which they were sold.  Instead, it turned out that these systems were defective and corrosive.  (*Id.* at p. 37-42)  The systems contained defects in workmanship and material at the time the systems left LORD's control, making them unfit for their intended use.  Notwithstanding LORD's knowledge that Terramix would include the MetalJacket and Chemlok products in Terramix gaskets used in industrial water pipe that

---

evidence) establishes LORD's culpability for the corrosion.  This is most clearly set forth in LORD's investigative report, which was the subject of Defendants' Motion to De-designate and which is more fully explained in Defendants' Memorandum in support of that Motion. [D.E. 208 & 210 n. 2]

[2]    On September 17, 2010, Terramix filed a Motion for Leave to Amend its Counterclaims to include a claim for violations of Chapter 75 of the North Carolina General Statutes based on the unfair and deceptive acts and practices of LORD that have come to light during the course of discovery.

would be shipped all over the world by sea and would be subject to continuous exposure to water, LORD's products failed to provide proper rust and corrosion resistance. (*Id.*) During the course of discovery, it has become apparent that LORD both knew of the corrosive tendencies or vulnerabilities of its products, but willfully misled Terramix concerning the problem, and also sought to conceal the true cause of the corrosion problem from Terramix. (Proposed Amended Counterclaims, ¶¶ 58, 62, 69, 72 [D.E. 270-1])

*The Case Management Deadlines Set by this Court.* With Terramix's counterclaims and LORD's pre-emptive claims before it, this Court entered an Order for a Discovery Plan on August 20, 2009, which required Rule 26(a)(1) initial disclosures to be served within fourteen days of the Rule 26(f) conference or at a different time agreed to by the parties. [D.E. 102] The Court's Order did not add additional requirements not imposed by Rule 26(a)(1). Thus, the disclosures under the rule remained *initial* disclosures. In the Joint Rule 26(f), the parties agreed that they would "exchange the information required by Rule 26(a)(1) of the Federal Rules of Civil Procedure no later than October 15, 2009." [D.E. 105] In fact, the parties made these disclosures on that date.

On November 3, 2009, the Court entered its initial scheduling Order in which it set the close of expert and fact discovery for September 1, 2010, the deadline to disclose experts by the party bearing the burden of proof on an issue for June 1, 2010, the response expert deadline for July 1, 2010, and the rebuttal expert deadline for August 1, 2010. [D.E. 123] At LORD's request, and with the consent of Defendants, this Court extended the foregoing deadlines by orders entered on May 13, 2010 [D.E. 168] and July 12, 2010 [D.E. 207]. In the July 12, 2010 Order, Magistrate Judge Gates reset the close of discovery for October 29, 2010, the deadline for disclosure of experts by the party bearing the burden of proof for August 16, 2010, the deadline for response experts for September 17, 2010, and the deadline for rebuttal experts for October 8, 2010. Further, Judge Gates's Order stated the following:

> Given the extensions already allowed by the court, the parties should treat the foregoing deadlines as final. No further extensions of these deadlines will be permitted absent a compelling showing of both diligence in the pursuit of discovery and truly exceptional need for additional time.

LORD's overreaching Motion for Sanctions may be a reaction to the above-quoted language in Judge Gates's Order more than anything else. Confronted with a record that reveals a lack of any claim theories upon which LORD ought to prevail, and that amply demonstrates LORD's tortious conduct towards Terramix, LORD wants a "do-over" of the discovery process at Defendants' expense and more time to implement this "do-over."

Defendants do not oppose a reasonable adjustment of the case management deadlines, if the Court is willing to consider the same. Indeed, Terramix's pending request to amend its Counterclaims based on recently-produced evidence of LORD's intentional, unfair, and deceptive conduct towards Terramix may provide a basis for reasonable adjustment of the case management deadlines so that the full extent of LORD's improper conduct may be uncovered. Had LORD complied with its obligation to engage in reasonable meet-and-confer efforts before burdening this Court with an overreaching Motion for Sanctions, it is entirely possible that the present round of filings would have been avoided.

Instead, LORD has chosen to accuse Defendants of failing to comply with their obligations under Rules 16, 26(a)(1), 30, 33 and 34 of the Federal Rules of Civil Procedure. Each such accusation is inconsistent with the Rules upon which LORD purports to rely *and* the record in this case.

***Defendant's Rule 26(a)(1) Initial Disclosures.*** As indicated above, this Court's initial Scheduling Order set the deadline for Rule 26(a)(1) initial disclosures as [October 15, 2009]. In compliance with this Order, Defendants timely served their initial disclosures on October 15, 2009. Specifically, Terramix made the following initial disclosures with respect to the damages Terramix was seeking for LORD's wrongful conduct:

> Terramix seeks at least $5 million in damages on its Second Counterclaim, which includes:
>
> • At least $2.3 million related to the failure of LORD's MetalJacket 1150/Chemlok 8210 system, including finished products that needed to be replaced and lost sales;
>
> • At least $1.8 million related to the purchase of the LORD's MetalJacket 1150, MetalJacket 1162, MetalJacket 3200, and Chemlok 8210; and
>
> • At least $1 million related to lost profits, damage to Terramix's reputation and goodwill.

6

Terramix also seeks an award of attorney's fees and costs associated with the litigation.

These disclosures were made by Terramix in good faith, based upon a reasonable investigation conducted by Terramix at the time the initial disclosures were made. Tellingly, LORD is unable to adduce any evidence to contradict this fact.

Further, Rule 26(e)(1)(A) does not require amendment or supplementation of Rule 26(a)(1) initial disclosures that are complete when made, if the supplemental information is produced in the course of discovery; therefore, Terramix did not take the unnecessary step of supplementing its Rule 26(a)(1) initial disclosures. This fact, too, goes uncontradicted by LORD.[3]

For their portion of the Rule 26(a)(1) initial disclosure, S&B and Weih stated the following:

> Defendants S&B Technical Products, Inc. and Weih do not seek damages, although they do seek an award of attorney's fees and costs associated with the litigation.

This statement was true when it was made, and it remains true. Neither S&B, nor Weih, seeks damages *from LORD*, as neither S&B, nor Weih, had a contract with LORD concerning the defective rubber-to-metal primers and adhesives that LORD supplied *to Terramix*.

LORD disregards this fact, and tries to confuse the issues by making it appear as if the Hazel Report accounts for damages S&B is seeking *from LORD*. That simply is not true. Rather, the Hazel Report properly analyzes Terramix's damages that come from Terramix's customers - S&B and Hultec Asia Pacific ("HAP") - making claims to Terramix resulting from harm they suffered when they purchased and then resold defective gaskets manufactured by Terramix using LORD's defective products.

***Defendants' Responses to Written Discovery Requests.*** On October 5, 2009, LORD propounded numerous written discovery requests to the Defendants. Among all of these requests were one interrogatory and four requests directed to Terramix for the production of documents related to Terramix's damages against LORD. On December 7, 2009, Terramix responded to these written discovery requests with the responsive information of which it aware at the time.

---

[3] Predictably, LORD has not supplemented its own Rule 26(a)(1) disclosures, which provided even less detail about damages LORD is seeking on its own claims than did Terramix's initial disclosures. (Martin Dec., ¶ 3 & Ex. A)

The interrogatory and the response stated the following:

> 23. Describe in detail all damages to which you contend you are entitled in connection with your Counterclaims, and, for each item of damages alleged, state the basis for the damages claimed; set forth, provide, and fully explain the calculation of that item of alleged damages; and identify all documents supporting or showing the alleged damages and the calculation thereof.

> RESPONSE: Terramix responds to Interrogatory No. 23 by referring LORD to the description of damages set forth in Defendants' Initial Disclosures. Terramix reserves the right to supplement its response to Interrogatory No. 23.

In the present motion, LORD seeks to have Terramix punished for doing exactly what it promised to do: supplement the response by providing additional information based on additional discovery and investigation.

The document requests and the responses thereto stated the following:

> 16. All documents relating to or otherwise evidencing money or other consideration Terramix has paid to its customers as a result of the alleged failure of the MetalJacket 1150/Chemlok 8210 system.

> RESPONSE: Subject to and without waiving the general objections, Terramix will produce documents responsive to Request No. 16 that are within its possession, custody or control.

> 17. All documents relating to or otherwise evidencing any loss of customers, loss of market share, or damage to reputation that Terramix has allegedly suffered as a result of the failure of the MetaJacket 1150/Chemlok 8210 system, as alleged in Paragraph 19 of Terramix's Counterclaims.

> RESPONSE: Subject to and without waiving the general objections, Terramix will produce documents responsive to Request No. 17 that are within its possession, custody or control.

> 50. All documents relating to or otherwise evidencing the "several millions of dollars" in customer claims Terramix contends it received from the failure of the MetalJacket 1150/Chemlok 8210 system, as alleged in Paragraph 19 of Terramix's Counterclaims.

> RESPONSE: Terramix objects to Request No. 50 to the extent it seeks the production of documents related to the trade secret claims and trade secret-related claims that are not the subject of these Requests. Subject to and without waiving this specific objection or the general objections, Terramix will produce documents responsive to Request No. [50] that are within its possession, custody or control.

> 51. All documents relating to or otherwise evidencing all "damages" Terramix contends it is entitled to, as alleged in Paragraph 19 of Terramix's Counterclaims, including any alleged damages for "loss of customers," "loss of market

8

share," "significant damage to Terramix's reputation for quality," and "other monetary damages."

> RESPONSE: Terramix objects to Request No. 51 to the extent it seeks the production of documents related to the trade secret claims and trade secret-related claims that are not the subject of these Requests. Subject to and without waiving this specific objection or the general objections, Terramix will produce documents responsive to Request No. 51 that are within its possession, custody or control.

Here, again, LORD's Motion for Sanctions seeks to fault Terramix for following through on the statement that it would produce documents in its possession, custody, or control.

In its sanctions-related filings LORD fails to apprise the Court that it has not served any interrogatories or requests for the production of documents on S&B asking S&B to identify any of its damages as a result of the corrosion. Nor has LORD ever served a subpoena on HAP seeking the production of such documents. Rather, all of LORD's written discovery requests on this issue have been served on Terramix, which, as explained below, has produced documents within *its* possession, custody or control. (Martin Dec., ¶ 7)

***LORD's Litigation by Correspondence Strategy.*** LORD's filings allude to the fact that LORD's discovery requests were so cumbersome that they required Defendants to devote seven months and hundreds of thousand of dollars to complete the initial production. Ultimately, Terramix has produced more than 115,000 pages of documents.

As LORD's filings implicitly acknowledge, a voluminous production like the one requested by LORD takes time to complete. Despite, or perhaps because of, this reality, Lord from the beginning has engaged in a burdensome letter writing campaign designed to create the false appearance that information was being withheld, and to obtain tactical advantages through compelling pre-mature supplementation to prevent supplementation in due course at appropriate times during the discovery period. LORD's own filings provide evidence of LORD's litigation-by-correspondence tactics. Perhaps, unsurprisingly, given LORD's letter-writing tactics, counsel for Terramix was relieved to be able to assure LORD's attorney on July 6, 2010 that Terramix had nearly completed the production of documents of which Terramix was aware at the time. (*See* July 6, 2010 E-mail from Martin, Ex. F to Lanzen Dec. [D.E. 257-7]). However

9

much LORD may seek to misconstrue this statement by Terramix's counsel, it was not a representation that further investigation during the course of discovery would not reveal additional documents that Terramix would produce.

*Terramix's Supplemental Document Production.* Indeed, as LORD notes, LORD served a Fifth Request for Production of Documents on July 14, 2010 in which it requested additional documents related to Terramix's damages claim against LORD. As LORD also notes, less than forty-five days after service of the July 14, 2010 discovery requests, Terramix made an August 25, 2010 production that LORD contends consisted of "23,000 pages of documents relating to the MetalJacket damages claims." (LORD's Mem. Supp. Mot. Sanction, p. 8). A substantial percentage of these documents had already been produced.

*Defendants' Deposition Testimony.* While written discovery and the production of documents have been under way, the parties also have taken depositions. If LORD truly is surprised by the extent of the harm its wrongful conduct has caused Terramix, that surprise cannot be related to the deposition testimony in this case. In the July 29, 2010 depositions of Gerardo Darce, the General Manager of Terramix, Mr. Darce testified that Terramix's damages included:

- Emergency air freight shipments of gaskets to its customers;
- Modifications to the molds;
- Cost of reconstructing the solvent-based adhesive line (purchase of equipment, invoices for services, invoices from contractors);
- Losses in production and slowdown in production;
- Expenses related to the replacement of corroded gaskets;
- Purchase of silicone lubricants; and
- Damages incurred by S&B and HAP.

(Darce Dep. pp. 66-76) During Mr. Darce's deposition, LORD never asked about the amount of damages that Terramix is seeking. Similarly, when LORD took the depositions of Terramix's Executive Vice President, Mark Weih, and Terramix's CEO and Owner, Brad Corbett, Sr., LORD did not even ask about the calculation of Terramix's damages.

Although LORD ignores Darce's deposition testimony to feign surprise that S&B's claims are an element of Terramix's damages against LORD, LORD acknowledges that it included the following topic for examination in the notice of Rule 30(b)(6) deposition of S&B, which was noticed in March 2010:

> 21. The amount, source, and nature of any damages incurred by S&B and/or its affiliates in connection with alleged complaints of corrosion on pipes, gaskets, or other parts manufactured by S&B, Terramix, or any S&B affiliate, including any refunds issued to customers and any lost sales or lost profits incurred as a result of such corrosion.

LORD would have this Court limit Terramix's damages claims because a corporate designee on this topic indicated that S&B's damages were consistent with an exhibit that LORD inquired about during the deposition. LORD fails to inform the Court, however, that during another portion of the Rule 30(b)(6) deposition of S&B, taken in part on June 8, 2010, LORD's counsel inquired of another witness, S&B President Brad Corbett, Jr., about Topic 21. During the Rule 30(b)(6) deposition, Mr. Corbett, Jr. testified that S&B has notified Terramix of S&B's claims, and that S&B expects to reach a satisfactory solution with Terramix. (Dep. Corbett, Jr. 30(b)(6) 51:1-13, 58:22-25, 59:1-4) Corbett, Jr. further testified as to the following categories of damages incurred by S&B:

- Direct costs associated with replacing corroded gaskets
- Lost sales
- Management time to repair relationships
- Loss of reputation

(*Id.* at 51:1-13, 53:5-12, 54:18-21, 55:6-12, 56:6-16, 63:3-18, 64:8-16)

During his June 9, 2010 individual deposition, S&B President Brad Corbett, Jr. specifically testified that Terramix's damages would include claims by S&B and HAP:

> Q: What information do you currently have about what damages Terramix has suffered?
>
> A: There are going to be large claims filed by both [HAP], S&B. I think there's some in Europe but not a lot. I think there's a little bit in Latin America, but not a lot.

(Dep. Corbett, Jr., 75:11-16) Mr. Corbett, Jr. testified that he believed S&B's damages claim to Terramix would be in excess of $2.5 million, and that S&B was still gathering numbers. (*Id.* at 75:23-25, 76:1-3) He also testified that he believed HAP had a claim of an additional $2.5 million against Terramix related

11

to the corroded gaskets. (*Id.* at 75:17-22) He added that Terramix has acknowledged to S&B that Terramix will pay S&B's claim. (*Id.* at 130:16 - 131:18)

Moreover, both Mr. Corbett Jr.'s portion of the S&B 30(B)(6) deposition, and Mr. Corbett Jr.'s individual deposition remain open by agreement of the parties. All together, Lord has approximately 4.5 hours of deposition testimony remaining with Corbett Jr. and, heretofore, has not requested any additional time beyond the 7 hour limit. On September 7, 2010, LORD noticed for September 21, 2010, the completion of Mr. Corbett Jr.'s individual deposition and the completion of the Rule 30(b)(6) deposition of S&B. When S&B provided notice that, because LORD had already asked Mr. Corbett, Jr., questions about Topic No. 21, Mr. Corbett, Jr. was being designated as an additional witness on Topic No. 21 in the Notice of Rule 30(b)(6) deposition of S&B, LORD feigned shock and unpreparedness, and withdrew both of its notices of deposition. LORD clearly preferred to further delay gathering evidence for trial by putting off completion of the S&B deposition and the individual deposition of Mr. Corbett, Jr., while continuing to burden this Court with the sanctions motion. (Martin Dec.¶¶ 9-11, Exs. I-P) Indeed, LORD has not noticed a single deposition since the August 16 disclosure of the Hazel Report.

Moreover, all witnesses produced by Defendants who offered deposition testimony prior to the August 16 disclosure of the Hazel Report, testified that the Defendants were still trying to compute their damages. LORD offers no evidence that this sworn testimony was inaccurate.

***The Designation of Steven J. Hazel as an Expert and Mr. Hazel's Expert Witness Report.*** In accordance with this Court's scheduling orders, Terramix timely disclosed Steven J. Hazel as an expert forensic accountant. Mr. Hazel's opinions concern the calculation of Terramix's damages if Terramix proves that it suffered damages as a result of LORD's wrongful conduct.

LORD incorrectly insists that there must have been a concerted effort to provide information to Mr. Hazel while withholding the same information from LORD during the time when Mr. Hazel was formulating his opinions and preparing his report. LORD's wholly speculative assertion is simply untrue. It was only on July 30, 2010, that Terramix first spoke with Mr. Hazel about him serving as an expert in this case. On August 3, 2010, Mr. Hazel first met with representatives of Terramix. Between August 3

and August 15, 2010, Mr. Hazel continued to discuss and investigate the potential damages calculation with representatives of Terramix, and he requested and reviewed materials that he needed to perform the damages calculation. It was these requests for information that gave rise to the recent supplemental production with which LORD purports to take issue. On August 16, 2010, Mr. Hazel finalized his expert report, and the report was served on counsel for LORD in accordance with Rule 26(a)(2) and this Court's scheduling order.

LORD also incorrectly asserts that, "in early July," Defendants "were clearly aware" of documents that were provided to Hazel, but "were not produced to LORD until two weeks after the Hazel Report had been completed." (LORD's Mem. Supp. Mot. Sanctions, p. 13.) LORD also asserts that "Defendants undoubtedly had these documents assembled and in transmittable form long before they were produced to LORD as they had to have been transmitted to Hazel much earlier." (Id.) These assertions are nothing more than rank speculation by LORD, and they are entirely untrue. (Martin Dec., ¶¶ 13-14)

The documents produced to LORD on August 25, 2010 were not "assembled and in transmittable form" prior to Mr. Hazel being retained on July 30, 2010.[4] Rather, the majority of the documents were assembled as Mr. Hazel identified and asked for what he needed during the approximately two-week period of time when Mr. Hazel was preparing his expert report. On August 24, 2010, shortly after Mr. Hazel completed his expert report (and before counsel for LORD sent her letter demanding the production of such documents), counsel for Terramix obtained all of the documents that Mr. Hazel had reviewed, conducted an expedited document review over a two-day period, and produced the documents in electronic format on August 25, 2010. (Id.) Because of the expedited nature of the production of these documents, optical character recognition ("OCR") was not available on August 25, 2010. As soon as the OCR was ready for production, Terramix produced it – on August 27, 2010 at 8 a.m. (Id.) Thus, contrary

---

[4]     If and when LORD notices and takes the deposition of Steven J. Hazel and/or the Rule 30(b)(6) of Terramix, LORD will learn this statement by LORD is not true. LORD would already know this if they had taken any depositions (and asked the questions) in the more than one month since the Hazel Report was served.

to LORD's speculative assertions, LORD received the documents reviewed by Mr. Hazel within only *nine days* after the Hazel Report was served. Further, LORD received both the Hazel Report and the documents reviewed by Mr. Hazel three full weeks before LORD's response expert designation deadline. Significantly, this left LORD with more time to review the documents than Mr. Hazel had been afforded in preparing his report.

LORD's assertions about the content of the Hazel Report are just as inaccurate as LORD's assertions about the discovery process preceding the Hazel report. For example, LORD repeatedly asserts that there are "twenty eight categories" of damages listed in the Hazel Report. (LORD's Mem. In Support Mot. For Sanctions, at p. 3) Basic arithmetic demonstrates that there are only twenty-one categories of damages listed in the Hazel Report:

Terramix's Damages
1. Purchase of Metal Jacket 3200
2. Air Freight
3. Increased Manufacturing Expenses
4. Lost Gross Profits for Lost Production
5. Tooling
6. Metal Jacket Line Equipment
7. Lube Materials
8. Claims-Related Expenses
9. Lost Profits – Negative Goodwill
10. Tool Repairs

S&B Damages
11. Replacement Costs
12. Lost Profits – Fontana Plant
13. Lost Profits – Price Reductions
14. Lost Profits
15. Rework Costs
16. Diminution in Value

Hultec Asia Pacific Damages
17. Costs to Rework
18. Stock Written Off
19. Labor
20. Other Expenses
21. Diminution in Value

A summary review of these categories reveals that many of the categories are related and captured different aspects of the same thing. LORD also might realize this fact if LORD conducted proper expert discovery instead of making an unfounded motion for sanctions.

A summary review of the Hazel Report further reveals that the vast majority of the categories identified in the Hazel Report fall within the five general categories set out in Terramix's Rule 26(a)(1) initial disclosures. The five categories set out in the initial disclosures were: (1) cost of replacement gaskets, (2) lost sales, (3) cost of LORD products purchased, (4) lost profits, and (5) loss of reputation.

14

The categories listed in the Hazel Report fall within the categories identified in Terramix's Rule 26(a)(1) initial disclosures as follows:

Cost of Replacement Gaskets
- Terramix claims related expenses
- Terramix Air Freight
- S&B Replacement Costs
- S&B Rework Costs
- HAP Cost to Rework
- HAP Stock Written Off
- HAP Labor
- HAP Other Expenses

Lost Sales
- Terramix lost gross profit for last production

Cost of LORD Products Purchased
- Purchase of Metal Jacket 3200

Lost Profits
- Terramix increased manufacturing expenses
- S&B Lost Profits – Fontana Plant
- S&B Lost Profits – Price Reductions
- S&B Lost Profits

Loss of Reputation
- Terramix Lost – Profits – Negative Goodwill
- S&B diminution of value
- HAP diminution of value

Thus, the Hazel Report added only the following additional categories (1) Terramix Tooling, (2) Terramix Metal Jacket Line Equipment, (3) Terramix Lube Materials, and (4) Terramix Tool Repairs. It is hardly surprising that an expert – one who was timely disclosed in accordance with the Court's scheduling order deadlines and well prior to the close of discovery – has provided additional information about the case.

***LORD's Response Expert.*** On September 17, 2010, LORD identified Ian Ratner, CPA, as a response expert on the issue of the calculation of Terramix's damages claims against LORD. Mr. Ratner's report is twenty-one pages long, with an appendix of twenty-one additional pages, and it purports to address each category of damages included in the Hazel Report. Mr. Ratner's report espouses numerous opinions regarding Terramix's damages claim, which are apparently rendered to a reasonable degree of professional certainty, thus demonstrating the hyperbolic nature of LORD's complaints about the timing and nature of the documents provided to LORD. Interestingly, Mr. Ratner's report states the following:

Generally, Hazel's opinion includes three overall categories of losses.

15

- Alleged costs associated with the 1150/8210 and 1162/3200 systems;
- Alleged lost profits associated with lost sales due to quality concerns; and
- Alleged diminution in value or lost value to Terramix or other companies associated with an actual or perceived product failure.

(Ratner Report, Ex. S to Martin Dec.,at p. 5).  Thus, as tacitly recognized by LORD's own responsive expert, the categories of damages in Terramix's Rule 26(a)(1) initial disclosures are essentially the same as those listed in the Hazel Report.

***LORD's Motion for Sanctions.***  On September 1, 2010, LORD filed the instant Motion for Sanctions.  At the time LORD filed its Motion, there were nearly two full months remaining in the discovery period, several depositions remained open, and LORD had seventeen days to serve its responsive expert report.  Although LORD claims that part of the relief it now wants is additional time, LORD's counsel declined to attend a meet-and-confer with Defendants' counsel to discuss the possibility of LORD obtaining additional (and, apparently unnecessary) time to disclose a response expert.  Instead, LORD demanded the withdrawal of the Hazel Report based on interpretations of the discovery rules by LORD that, as explained below, are specious.

Indeed, LORD's Motion for Sanctions, and the interpretations of the Rules upon which it purportedly is based, are especially unwarranted when one considers LORD's conduct in this case.  In stark contrast to its preachy tone, LORD has donned the white cap it urges upon Defendants with notable infrequency.  For example, LORD accuses Defendants of improperly invoking Rule 33(d) without providing bates numbers for the documents being produced in response to specific interrogatories.  However, when LORD raised this issue in a hearing held by Judge Gates on September 8, 2010, LORD was forced to concede that LORD has not identified bates numbers for documents when it has invoked Rule 33(d).  Similarly, although LORD urges the importance of supplementation (while seeking sanctions where supplementation has been made by Defendants), LORD fails to inform the Court that LORD has seldom supplemented anything in this case without being required to do so by a specific order from the Court.  (Martin Dec., ¶ 5)  Moreover, LORD's initial disclosures, interrogatory, and responses to requests

16

for the production of documents are strikingly similar to the responses by Defendants about which LORD complains.

There is no factual basis for LORD's Motion for Sanctions. It is an attempt to obtain unusual and unfair results based on a manufactured crisis and a misinterpretation of the Rules of Civil Procedure.

## ARGUMENT

**I.      DEFENDANTS DID NOT VIOLATE THE FEDERAL OR LOCAL RULES OF CIVIL PROCEDURE AND DID NOT ENGAGE IN ANY IMPROPER CONDUCT.**

LORD moves for sanctions, erroneously alleging that Defendants violated this Court's scheduling order and Rules 16, 26, 30, 33, and 34. As explained below, LORD's request that this Court sanction Defendants by excluding the Hazel Report is wholly lacking in merit and should be denied.

A.      Defendants Timely and Properly Disclosed Their Claimed Damages in Full Compliance with Rule 26(a)(1).

Defendants timely provided the initial damages disclosure required by Rule 26(a)(1). Tellingly, Plaintiff does not even allege in its motion for sanctions that Defendants failed to provide initial disclosures as required under Rule 26(a)(1) or that those initial disclosures were untimely. Instead, Plaintiff alleges that Defendants violated Rule 26(a)(1) because their initial disclosures did not contain a final statement of the damages claimed by Defendants and because Defendants have allegedly failed to amend or supplement its initial disclosures. However, these conclusory allegations ignore the facts of this case and misconstrue the law regarding initial disclosures.

It is well-settled that initial disclosures are intended to be just that—*initial* disclosures. Rule 26 specifically contemplates a party's initial disclosures will be based merely on "the information then reasonably available to it" and that the disclosing party will supplement its response "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(a)(1)(E), 26(e)(1)(A). As federal courts have held,

> [A party's] initial damages disclosure under Rule 26(a) *is merely a preliminary assessment and is subject to revision*. *See* Fed.R.Civ.P. 26(e) (providing for a party's duty to supplement or correct disclosure). As discovery proceeds, Plaintiffs may, indeed must, supplement their initial damages disclosure to reflect the information obtained through discovery.

*City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (emphasis added).[5]  Nothing in the Rule or the relevant case law suggests that initial disclosures must contain the final damages calculation or that a party cannot supplement its damages as discovery continues.

Moreover, although Plaintiff alleges that Defendants have not amended or supplemented their initial disclosures, Defendants have provided Plaintiff with supplemental damages information in compliance with Rule 26.  Rule 26(e) provides that a party must supplement or correct its initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, ***and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing***."  Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).  As the Advisory Committee Notes clarify, "There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process."  Fed. R. Civ. P. 26 Advisory Committee Notes.

The Fourth Circuit recently addressed this issue in *RCSH Operations, L.L.C. v. Third Crystal Park Ass'n*, 115 Fed. Appx. 621 (4th Cir. 2004).  In that case, the plaintiff served initial disclosures listing the amount of its damages as $78,346.87, but introduced evidence on the day of trial increasing the amount of its damages claim to $110,372.14.  *Id.* at 632.  Although the defendant alleged that the plaintiff should be precluded from recovering any amount in excess of its initial disclosures, the court rejected that argument, noting that the increased amount of damages was disclosed during the discovery process.

> Although RCSH continues on appeal to assert that there was a difference between the initial disclosure and the sum proved at trial, it does not contend that the district court erred in finding that the greater sum was disclosed in discovery and 'gone through in some detail.'  ***The mere fact that the damage claim was increased after the initial disclosure does not operate to foreclose proof of the greater amount where, as the district court held, the greater amount was the subject of discovery***.  Indeed, Rule 26(a)(1) contemplates that the initial disclosure will be based on information available at the time of disclosure. And, Rule 26(e) requires that initial disclosures be supplemented. Considering this record, the district court's findings respecting supplemental disclosure,

---

[5] The Advisory Committee Notes clarify that Rule 26(a)(1) "does not demand an exhaustive investigation at this stage of the case" and that a disclosing party must supplement its disclosures "[a]s its investigation continues and the issues in the pleadings are clarified."  Fed. R. Civ. P. 26 Advisory Committee Notes.

and the provisions of Rule 26(a)(1) and Rule 26(e), we find no abuse of discretion in the district court's decision to allow proof of the larger damage sum.

*Id.* (emphasis added).

In this case, Terramix supplemented the damages listed in its initial disclosures by producing the Hazel Report to Plaintiff during the discovery process. The Hazel Report was produced to Plaintiff with more than two months remaining ***before*** the discovery deadline, ***before*** the deadline for the disclosure of expert reports, ***before*** Plaintiff took the deposition of Terramix's expert, and ***before*** Plaintiff's 30(b)(6) depositions of Defendants had been completed.[6] As such, Plaintiff has an opportunity to conduct additional discovery regarding Terramix's damages, including taking the deposition of Mr. Hazel. *See IGT v. Alliance Gaming Corp.*, No. 2:04-CV-1676-RCJ-RJJ, 2008 WL 7071468, at *15 (D. Nev. Oct. 21, 2008) (refusing to exclude supplemental expert report revising the party's damages calculation where the report and supporting documents were produced well in advance of trial and the parties had an opportunity to conduct additional discovery). Thus, Terramix fully complied with Rule 26, and Plaintiff's Motion on this ground lacks merit.

B.  Defendants Timely and Accurately Responded to Plaintiff's Written Discovery Requests, in Full Compliance with the Scheduling Order and Rules 33 and 34.

LORD only served written discovery concerning damages on Terramix. LORD now seeks sanctions against all of the Defendants based upon Terramix's complete responses to one interrogatory and four requests for production of documents. As shown in the facts above, Terramix fully complied with this Court's scheduling order and the Federal and Local Rules of Civil Procedure, in responding to LORD's discovery requests.

LORD's relevant interrogatory sought information related to Terramix's damages claim. In response, Terramix appropriately referred LORD to its "description of damages set forth in Defendants' Initial Disclosures" and specifically "reserve[d] the right to supplement its response." (Terramix Resp. &

---

[6] LORD relies upon *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 635 (S.D.N.Y. 2005), *aff'd*, 469 F.3d 284, 293 (2nd Cir. 2006), which is entirely distinguishable from this case. In *Davis*, the plaintiff disclosed an expert witness designated to testify as to lost profits well after the close of discovery, in a proposed pretrial order. The harm to defendants in *Davis* is wholly absent in this case because the discovery period here does not end until October 29, 2010.

Obj. to LORD's First Int. at 23.) Terramix timely served its responses to LORD's interrogatories and provided its answers "separately and fully in writing under oath." Fed. R. Civ. P. 33(b). Terramix supplemented its response to interrogatory number 23 by timely providing LORD with the Hazel Report, which "[d]escribe[d] in detail all damages to which [Terramix] contend[s] [it is] entitled," including "the basis for the damages claimed," "the calculation," and the "documents supporting . . . the alleged damages and the calculation thereof," as requested in the interrogatory. Thus, Terramix responded to LORD's interrogatory and supplemented its response, timely and properly, and has not "skirted [its] responsibility" as LORD erroneously states.

LORD feverishly (and erroneously) attempts to inflate defense counsel's letter of February 23, 2010 into evidence of a discovery violation. According to LORD, in the letter, Terramix "refused to supplement its response to Interrogatory 23." (Pl's Memo. in Support at 12.) This characterization is inaccurate, as the February 23, 2010 letter actually states, "Terramix reserved its right to supplement its response to this Interrogatory, and will do so in due course." LORD conveniently omits that the February 23, 2010 letter also notes that Terramix's response to Interrogatory 23 is comparable to LORD's response to a similar interrogatory propounded to it by Terramix. Then, ignoring that LORD has not itself specifically identified the bates numbers of any documents that LORD has produced pursuant to Rule 33(d), LORD purports to fault Terramix because, in LORD's view Terramix "appear[s] to be invoking" Rule 33(d) in its response to Interrogatory No. 23, even though Rule 33(d) is not specifically mentioned. LORD's argument in this regard is both inaccurate and hypocritical.

LORD also complains that Terramix did not provide a complete response to their four requests for production of documents that relate to its claimed damages. Again, Terramix timely and properly responded that "it will produce documents responsive to Request No. [16, 17, 50, & 51] that are within its possession, custody or control." (Terramix Resp. & Obj. to LORD's First RPDs at 10, 21.) In addition to is other productions, Terramix produced documents to LORD on August 13, 2010 and on August 25, 2010. LORD seeks to sanction all of the Defendants to strike the Hazel Report solely based on its

complaint that its counsel received documents upon which Mr. Hazel relied nine days after they received the Hazel Report, which was a little more than nine weeks before the close of discovery.

LORD also complains to this Court that "many documents relied upon in the Hazel Report have <u>still</u> not been produced to LORD." (Pl's Memo. in Support at 14 (emphasis in original).) Yet, LORD defines these "many" missing documents by only two examples. First, LORD argues that Defendants failed to produce documents supporting "the section of [Hazel's] report discussing S&B's losses." (*Id.*) Second, LORD states that it "has not yet been able to identify any documents produced by Defendants which evidence [HAP's] stock write off." (*Id.*) However, LORD's fails to inform this Court that it has never served S&B with any written discovery requests seeking documents relating to damages, and thus, has no basis to seek sanctions for LORD's failure to receive documentation from S&B of S&B's damages resulting from corrosion caused by LORD's products. Regardless, S&B does not seek to recover any damages from LORD; rather, S&B's claims against Terramix form a portion of Terramix's damages. Likewise, HAP is included in the Hazel Report because its claims against Terramix represent another component of Terramix's damages. LORD is free to take expert discovery and determine which of the documents Mr. Hazel relied upon in forming his conclusions. Terramix has produced the documents that Mr. Hazel relied upon in forming his opinion and report.

Finally, LORD erroneously complains that Defendants did not supplement their initial disclosures and discovery responses as required by Rule 26(e) and this Court's scheduling order. To the contrary, Terramix timely provided initial disclosures as required by Rule 26(a). Terramix did not specifically supplement its initial disclosures because Rule 26(e) does not require supplementation of initial disclosures except under the circumstances specified in the Rule, which do not exist here. The Rule only requires a party to "supplement or correct its disclosure response . . . if . . . the disclosure or response is incomplete or incorrect, ***and*** if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. Rule 26(e)(1)(A) (emphasis added).

LORD's motion for sanctions and supporting memorandum mischaracterizes the discovery process and improperly attempts to invoke alleged rule violations that do not exist. Accordingly, this Court should deny LORD's motion, finding that LORD fails to provide any valid ground for sanctions because Defendants did not violate any applicable federal rule or the scheduling order.

        C.      <u>Plaintiff Fails to Demonstrate Any Valid or Proper Basis for This Court to Exclude the Hazel Report Under Either Rule 37 or Rule 16(f).</u>

            1.    <u>Rule 37 Does Not Support Exclusion of the Hazel Report.</u>

Even assuming all of LORD's allegations to be true—that Terramix supplemented its discovery responses by providing its expert report within the discovery period, but later than LORD preferred to receive the information—none of LORD's arguments supports any form of sanctions against Defendants, and certainly not the striking of Terramix's timely disclosed expert's report. Both the law of this jurisdiction and that of other jurisdictions require a denial of LORD's motion.

When challenged information is timely produced, federal courts have held that it is not appropriate under Rule 37(c) (1) to exclude witnesses and evidence for failure to disclose. For example, in *Salami v. North Carolina Agric. & Technical State University.*, 394 F. Supp. 2d 696 (M.D.N.C. 2005), *aff'd*, 191 Fed. Appx. 193 (4th Cir. 2006), the plaintiff was aware of the defendant's expert witness's identity in early August 2004. *Id.* at 709. The defendant's expert witness report was due on October 29, 2004, but it was not served until November 12. *Id.* at 709. General discovery closed on November 29, 2004. The defendant argued that the plaintiff caused the report's delay by choosing the last proposed day to submit to a mental health examination. *Id.* at 710.

In response, the plaintiff argued that the defendant "purposefully held on to the expert report for as long a period of time as possible, thereby depriving Plaintiff of the opportunity to conduct meaningful discovery or question the theories or results surrounding Defendant's findings." *Id.* The court rejected the plaintiff's argument, however, because

> Plaintiff was provided with Defendant's expert opinion two weeks prior to the close of discovery, and more than twenty weeks prior to trial. Therefore, Plaintiff cannot meet the *Southern States* test, as Plaintiff cannot plausibly claim surprise, and Plaintiff failed to make any effort to cure any surprise that did exist by using the two remaining weeks of

discovery or by accepting Defendant's offer to extend discovery or to allow the expert's deposition to be taken outside of the discovery period.

*Id.* Additionally, that court noted that allowing the expert's testimony would not disrupt the trial, and the testimony was important to Defendant's case. *Id.* Therefore, the court denied Plaintiff's motion to exclude. *Id.*; *see also Novak v. Capital Mgmt. & Dev. Corp.*, 241 F.R.D. 389, 391 (D.C. Cir. 2007) (holding that "[t]here is no basis to move to strike a supplementation of an initial disclosure of potential witnesses under the Federal Rules of Civil Procedure that occurs during the discovery period, provided there is no evidence of 'gamesmanship'"); *Review Directories, Inc. v. McLeodUSA Publ'g Co.*, No. 1:99CV958, 2001 WL 34054520 (W.D. Mich. Aug. 8, 2001) (denying the defendant's motion to strike portions of the plaintiffs' expert reports quantifying damages, where the plaintiff's complaint asserted claims related to directories only in certain counties enumerated in the complaint, because the court found that the defendant had adequate notice (one month prior to the close of fact discovery and two months prior to the close of expert discovery) that the plaintiff was pursuing additional markets, but chose not to pursue further discovery on the additional areas; and thus, the court declined to limit the plaintiff's claims).

In *McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 592-93 (E.D.N.C. 2009), the court refused to exclude the plaintiff's expert, even though the plaintiff did not include him in the Rule 26(a) disclosures, because he had been previously identified in a deposition. The court also relied upon the fact that the defendants received his report two months before expert reports were due, four months before the close of discovery, and eight months prior to trial. Thus, the defendants could not establish "the first and third factors [of the *Southern States* test], surprise to Defendants and the extent to which allowing the evidence would disrupt the trial." *Id.* at 593. Further, "Plaintiffs' noncompliance [could] be cured by amendment of the scheduling order providing Defendants more time to disclose reports from their retained experts." *Id.*

In *Cytyc Corp. v. TriPath Imaging, Inc.*, No. 03-11142-DPW [Lead Case], 03-12630-DPW, 2005 U.S. Dist. LEXIS 12777, *10 (D. Mass. June 21, 2005), the court addressed TriPath's Rule 37(c)(1)

motion to exclude Cytyc's defenses based on Cytyc's alleged failure to timely supplement its interrogatory responses during the fact discovery period. *Id.* In denying TriPath's motion to exclude, the court found that Cytyc produced all the materials related to its defenses, supplementing its production as new material was discovered, before the close of fact discovery. *Id.* at *10-11. The court also determined that Cytyc's supplementation of the contention interrogatory at issue was made within, although at the end of, the fact discovery period. *Id.* The Court concluded that TriPath failed to show that Cytyc's supplementation with regard to document production or the contention interrogatory response was untimely or was delayed with the intention to prejudice TriPath. *Id.*; *see also Int'l Truck & Engine Corp. v. Caterpillar, Inc.*, No. 1:03-CV-265, 2004 U.S. Dist LEXIS 27447, *5 (N.D. Ind. May 26, 2004) (denying Caterpillar's motion to preclude ITEC from asserting information included in late supplemented discovery responses, finding that any delay to Caterpillar from ITEC's amendment two days before the close of fact discovery was harmless because discovery in the case was ongoing and the trial date was ten months away.)

Even when courts have determined that a party failed to timely disclose or amend information under Rule 26(a), the courts have refused to impose sanctions that would result in the exclusion of evidence when the reason for the delay was not improper, the discovery period was ongoing, and the opposing party still had an opportunity to prepare a defense to the newly disclosed evidence. *Dunhem et. al. v. Suntrust Banks, Inc.,* No. AW-04-1016, 2006 U.S. Dist. LEXIS 97222, at *8, (D. Md. March 2, 2006). In *Dunhem,* the court refused to apply what it termed the "harsh sanction" of exclusion of Plaintiff's expert's testimony pursuant to Rule 37(c)(1). *Id.* In support of its finding, the court noted that the purpose of the disclosure requirements of Rule 26 was to allow the opposing party adequate time to prepare an effective defense. *Id.* (citing Committee Notes, 1993 Amendments to the Federal Rules of Civil Procedure, 146 F.R.D. 401, 633 (1993)). The *Dunhem* court held that although Plaintiff's supplementation of its initial expert disclosure was made approximately one month after the court's deadline, opposing counsel still had ample opportunity to depose the witness and prepare a defense, and thus opposing counsel did not suffer prejudice. *Id.* at *8; *see also Shingleton v. Government Employees Insurance Comp.*, No. 7:09-CV-125-BO, 2010 U.S. Dist. LEXIS 71519, *4 (E.D.N.C. July 16, 2010)

(finding that Defendant's motion to exclude should be denied because the inclusion of the disputed information would not cause significant disruption in the case, especially in light of the fact that the Defendant was able to review the information for more than five months, that no trial date had been set, and that dispositive motions had not been filed).

Similarly, in *GRV Aviation, Inc. v. Hale Aircraft, Inc.*, No. 1:00-CV-1978, 2003 U.S. Dist. LEXIS 27573 (N.D. Ga. Jan. 31, 2003), the defendant moved to exclude evidence of damages, or, in the alternative, to compel, and moved to exclude expert opinion testimony. *Id.* at *1-2. In the first motion, the defendant argued that the plaintiff violated Rule 33 by failing to answer fully an interrogatory requesting information about damages. *Id.* at *2. The defendant argued that the court should either exclude damages evidence at trial or compel the plaintiff to respond fully. *Id.* After the defendant filed its motion, but one month prior to the close of discovery, the plaintiff served a supplemental response that fully answered the interrogatory regarding damages. *Id.* at *3-4. The court was "troubled by Plaintiff's delay in providing th[e] information and by the fact that the response was served only after [Defendant] filed its motion to compel," however, the court refused to exclude the evidence or to sanction the plaintiff. *Id.* *4-5. Rather, the court merely reminded the plaintiff of its ongoing duty to supplement. *Id.* at *5.

The defendant moved to exclude expert testimony, arguing that the plaintiff failed to provide the expert report until "days before the discovery period was set to close." *Id.* at *8-9. The defendant asserted that "[b]ecause of Plaintiff's delay, . . . it suffered great prejudice because it was unable to search for, identify, or retain a rebuttal expert within the discovery period." *Id.* at *9. The court agreed with the defendant that the plaintiff failed to disclose timely its expert's report, as required by Rule 26(a)(2)(B). *Id.* at *11. The court also found that the plaintiff's violation of Rule 26(a) was not substantially justified as contemplated by Rule 37(c)(1). *Id.* at *12.

However, the court held that the non-disclosure was harmless and refused to exclude the report. *Id.* at *12-13. "Failure to make the required expert witness disclosures is harmless 'when there is no prejudice to the party entitled to the disclosure.'" *Id.* (citation omitted). Because the defendant had the expert report two weeks prior to its second deposition of the witness, "it appear[ed] that the only prejudice

25

[was] that, given the tardiness of the disclosure and the discovery deadline imposed by this Court, [Defendant] did not have sufficient time to obtain its own expert." *Id.* at *13. These circumstances merited the lesser sanction of awarding costs to the defendant, but they did not merit the "extreme sanction of evidence preclusion." *Id.*

Scheduling deadlines for fact and expert discovery "do not impose limits on the time in which an expert may file a supplemental report correcting incorrect or incomplete information. The proper guidepost for timeliness is supplied by Rule 26(e)(2)'s imposition of a specific deadline for supplemental disclosures, which is 30 days prior to trial." *Option One Mortgage Corp. v. Universal Mortgage Group, Inc.*, No. 3:06-2007(JFA), 2007 U.S.Dist. LEXIS 110772 at *4 (D.S.C. August 27, 2008).

The frivolous nature of LORD's motion for sanctions is best revealed by the fact that LORD does not cite **one case** where the court imposed or upheld sanctions, much less exclusion of relevant evidence, because of a party's disclosure made **within** the discovery period. Instead, all of the cases that LORD cites deal with sanctions imposed for disclosure of documents/supplementation/interrogatory responses **after the close of discovery**. *See Contech Stormwater Solutions, Inc. v. Baysaver Techs. Inc.*, 534 F. Supp. 2d 616, 623 (D. Md. 2008) (excluding evidence that was not disclosed until after the close of discovery, including some that was not disclosed until after the deadline for dispositive motions had passed); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 594 (4th Cir. 2003) (excluding an expert opinion that was not disclosed until the third day of trial); *Rambus, Inc. v. Infineon Tech. AG*, 145 F. Supp. 2d 721, 723, 727, 735 (E.D. Va. 2001) (excluding certain opinions presented in expert report that was not produced until over a month after the close of expert discovery, a month-and-a-half after the close of fact discovery, and only one week before trial, but refusing to exclude other portions of the expert report that could be defended against without re-opening discovery).

   2.   Rule 16(f) Does Not Support Exclusion of the Hazel Report.

LORD also seeks exclusion of the Hazel Report on the mistaken ground that Defendants allegedly violated the prompt supplementation requirement set forth in the scheduling order. This argument is premised entirely upon LORD's incorrect speculation that Terramix sent damages-related

documents to its expert "long ago" but did not provide them to LORD until recently. Had LORD bothered to conduct expert discovery, or hold a meet-and-confer, before filing an unfounded motion for sanctions, it would have learned that Terramix gathered the documents at issue during the approximately two-week period preceding the service of the Hazel Report and produced them to LORD within nine days after serving the Hazel Report. Terramix did not withhold the documents and certainly did not produce them after the close of discovery or less than thirty days prior to trial in violation of Rule 26(e) or this Court's scheduling Order.[7] Indeed, Terramix will continue to supplement its production as additional responsive documents identified.

   D.    <u>Defendant S&B's Rule 30(b)(6) Testimony Does Not Provide Grounds for Sanctioning Terramix by Limiting the Damages That Terramix May Seek in This Case.</u>

LORD's putative argument under Rule 30(b)(6) is, in the kindest view one may take of it, frivolous. LORD contends that ***Terramix's*** claims for damages should be stricken because of testimony offered ***by S&B*** during S&B's Rule 30(b)(6) deposition. As indicated above, S&B has not brought counterclaims against LORD, and LORD provides no factual or legal basis for using S&B's testimony as a basis for preventing Terramix from recovering damages related to claims that S&B may submit to Terramix arising from use of LORD's defective products.

In addition, LORD's Rule 30(b)(6) argument is premised upon an explanation of S&B's testimony that LORD should know is inaccurate. Although LORD might prefer to have only the testimony of Wayne Bird on the issue of damages, LORD's counsel opened the door for additional testimony on the subject by asking another S&B corporate designee, Brad Corbett, Jr., questions about S&B's injuries relating to LORD's defective products. As a representative of S&B and the corporation's President, Mr. Corbett, Jr. expanded upon and clarified the categories of damages which S&B incurred. Having made the mistake of asking these damages-related questions, LORD cannot avoid the answers. *Cf. Rios v. AT&T Corp.*, 36 F. Supp. 2d 1064, 1067 (N.D. Ill. 1999) (holding that party had the right to amend an

---

[7] Now that LORD has located Rule 26(e) and Section 10 of this Court's Scheduling Order, it will be interesting to see when LORD will begin supplementing its numerous incomplete written discovery responses, including its written discovery responses concerning damages.

answer given during the previous day's deposition testimony because "litigants are free to amend their deposition testimony at *any point* prior to the end of that deposition" (emphasis added)). Further, it is disingenuous for LORD to seek to limit the testimony of a party without providing the court with complete information about the nature of that testimony.

Finally, LORD's Rule 30(b)(6) argument grossly misapprehends the law on the subject. A corporation "is not precluded from providing evidence different or beyond that which was provided at its 30(b)(6) deposition." *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 218 F.R.D. 455, 462 (M.D.N.C. 2003) (emphasis added). (recognizing that "statements in a 30(b)(6) deposition are not the same as judicial admissions" and that "under certain circumstances [a] corporation may contradict the testimony at trial" (citation omitted)); *United States v. Taylor*, 166 F.R.D. 356, 362 n.6, *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996) ("When [a] court indicate[s] that the Rule 30(b)(6) designee gives a statement or opinion binding on the corporation, this does not mean that said statement is tantamount to a judicial admission."); *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000) (denying motion to exclude evidence contrary to testimony given at 30(b)(6) deposition because "such testimony is not a judicial admission that ultimately decides an issue. The testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted . . . ."). Additionally, "information could be discovered in good faith later that could form the basis for a position [the corporation] may wish to assert at trial and was unable to assert at the deposition." *Taylor*, 166 F.R.D. at 363. Thus, LORD's arguments based on Rule 30(b)(6) provide no support for LORD's attempt to have expert evidence quantifying Terramix's damages improperly excluded.

## II.     PLAINTIFF FAILS TO PRESENT SUFFICIENT GROUNDS FOR THIS COURT EITHER TO REOPEN DEPOSITION TESTIMONY OR TO ALLOW PLAINTIFF ADDITIONAL TIME TO RESPOND TO THE HAZEL REPORT.

Based upon its misreading of the discovery rules, LORD insists that "exclusion of evidence relating to the damages described in the Hazel Report" is the appropriate "remedy." Perhaps realizing, however, that there is no legitimate factual or legal basis for seeking such extraordinary relief, LORD

offers up an alternative set of measures that it would like the Court to implement. LORD's alternative remedies also lack support in the Rules.

LORD first requests that the Court force Defendants to certify, prior to the close of the discovery period, that they have produced all responsive documents related to Terramix's damages. LORD likely intends this measure to appear harmless, and, therefore palatable to the court. In reality, however, granting this relief would afford LORD further opportunities to distort the rules and burden this Court with unfounded motions practice. If, for example, Terramix were to certify that it had produced all such documents based on a reasonable investigation conducted at the time, but later realized that additional documents should be produced as a supplemental production, then LORD undoubtedly would bring another groundless motion for sanctions. Moreover, such certifications are unnecessary. These documents already must be provided prior to the close of discovery to the extent such documents are in existence prior to the close of discovery, or they cannot be used by Terramix to support dispositive motions or at trial pursuant to Rule 37(c)(1).

LORD also makes related requests that this Court reopen several concluded depositions (of parties and non-parties) and require that the extended depositions go forward in Raleigh. As already indicated, the depositions of S&B and Mr. Corbett, Jr. have been left open by agreement of the parties, and LORD has already obtained a second day of deposition of Dr. Weih. It is inappropriate for LORD to request additional time when it has not used the time that it already has. It is equally inappropriate for LORD to seek additional time with deponents whom LORD did not even ask about damages, such as Mr. Corbett, Sr., and LORD has provided no reason why it needs additional time for depositions of the remaining individuals. Further, LORD provides no justification for its proposed change of venue for the "reopened" depositions, and as LORD is aware, moving the depositions to Raleigh would be unduly burdensome for the would-be deponents, all of whom reside in Costa Rica or Texas, and most of whom are not parties. *Work v. Bier*, 107 F.R.D. 789, 793 (D.D.C. 1985) ("[T]he universally accepted rule in federal litigation is that, in the absence of special circumstances (such as an impoverished plaintiff and a very affluent defendant), a party seeking discovery must go where the desired witnesses are normally

located . . . . Absent exceptional circumstances, the deposition of a defendant corporation by its agents and officers should ordinarily be taken at its principal place of business.") (citations omitted). Finally, LORD would have this Court ignore the additional costs of such "do-overs", and that those costs would fall disproportionately on the Defendants, who do not have the resources of LORD.

LORD also requests relief from the existing case management deadlines. This request is inappropriate to the extent it is derivative of LORD's motion to exclude, or its requests for extraordinary certifications or deposition practices. However, given that evidence of LORD's tortious conduct towards Terramix recently uncovered during discovery has resulted in Terramix seeking to amend its counterclaims, a reasonable adjustment of the scheduling order deadlines may be appropriate, to the extent the Court approves of the same.

Finally, LORD seeks to recover its fees and costs associated with bringing its Motion for Sanctions. Because the motion for sanctions is entirely specious, LORD is not entitled to its fees and costs. Indeed, Defendants should be compensated for having to respond to LORD's Motion.

<u>**CONCLUSION**</u>

Defendants respectfully request that LORD's Motion for Sanctions be denied in its entirety.

Respectfully submitted, this the 22nd day of September, 2010.

NELSON MULLINS RILEY & SCARBOROUGH LLP

*/s/ Stephen D. Martin*
David A. Harlow
N.C. State Bar No. 1887
USPTO Reg. No. 37,146
Stephen D. Martin
N.C. State Bar No. 28658

4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 877-3800
Fax: (919) 877-3799

E-Mail Address: david.harlow@nelsonmullins.com
E-Mail Address: steve.martin@nelsonmullins.com

*Attorneys for Defendant and Counterclaim Plaintiff
Terramix, S.A.*

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney of the law offices of Nelson Mullins Riley & Scarborough LLP, attorneys for Defendant and Counterclaim Plaintiff Terramix, S.A., do hereby certify that on September 22, 2010, I electronically filed the foregoing Response in Opposition to Plaintiff LORD Corporation's Motion for Sanctions with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- Hayden J. Silver III (jsilver@kilpatrickstockton.com)
- Betsy Cooke (bcooke@kilpatrickstockton.com)
- John M. Moye (jmoye@kilpatrickstockton.com)
- Marina Carreker (mcarreker@kilpatrickstockton.com)

*Attorneys for Plaintiff and Counterclaim Defendant LORD Corporation*

NELSON MULLINS RILEY & SCARBOROUGH LLP
*/s/ Stephen D. Martin*
David A. Harlow
N.C. State Bar No. 1887
USPTO Reg. No. 37,146
Joseph W. Eason
N.C. State Bar No. 7699
Reed J. Hollander
N.C. State Bar No. 23405
Stephen D. Martin
N.C. State Bar No. 28658

4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 877-3800
Fax: (919) 877-3799

E-Mail Address: david.harlow@nelsonmullins.com
E-Mail Address: joe.eason@nelsonmullins.com
E-Mail Address: reed.hollander@nelsonmullins.com
E-Mail Address: steve.martin@nelsonmullins.com

*Attorneys for Defendant and Counterclaim Plaintiff Terramix, S.A.*