IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CV-205-D

| | | |
|---|---|---|
| LORD CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>S&B TECHNICAL PRODUCTS, INC., TERRAMIX S.A., and MARK A. WEIH,<br><br>Defendants. | ) | **MEMORANDUM AND RECOMMENDATION** |

This case comes before the court on the motion (D.E. 186) by defendants S&B Technical Products, Inc. ("S&B"), Terramix S.A. ("Terramix"), and Mark A. Weih ("Weih") (collectively "defendants") for entry of judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure[1] dismissing various claims by plaintiff Lord Corporation ("plaintiff" or "Lord"). In the alternative, defendants seek dismissal of the same claims pursuant to either Rule 41(b) for plaintiff's alleged failure to comply with court orders or pursuant to Rule 12(c) after striking pursuant to Rule 37(b) certain interrogatory answers. The central alleged deficiency by plaintiff underlying defendants' theories is the failure to adequately describe the trade secrets it alleges defendants misappropriated, particularly to separate them from matters in the public domain. Plaintiff opposes the motion, which has been fully briefed.[2] It was referred to the undersigned

[1] All rules cited in this order are rules in the Federal Rules of Civil Procedure.

[2] In support of their motion, defendants filed a memorandum (D.E. 187) and exhibits (D.E. 186-1 through 186-10). Plaintiff filed a memorandum (D.E. 213), declaration (D.E. 214), and exhibits (D.E. 214-1 through 214-6 and 213-1) in opposition. In reply, defendants filed a memorandum (D.E. 236) and declaration (D.E. 238) with exhibits (D.E. 238-1 through 238-13). By order entered contemporaneously herewith, the court allowed defendants' motion (D.E. 352) for leave to file a supplemental memorandum (D.E. 352-1) in support of their motion. The memorandum is supported by several exhibits, a few of which had not previously been filed on the motion (*i.e.*, D.E. 349-6 through 349-8).

Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 268). For the reasons set forth below, it will be recommended that defendants' motion be denied.

## BACKGROUND

In this action, commenced on 9 May 2009, plaintiff alleges that Terramix and its affiliate S&B, working with plaintiff's former employee Weih, manufactured and distributed primer and adhesive products named Kemibond substantially similar to plaintiff's Chemlok brand of primers and adhesives in purported violation of rights of plaintiff relating to the Chemlok products. (*See* Am. Compl. (D.E. 25)).[3] Plaintiff asserts eight claims: against Weih for breach of his employment agreement (first claim, *id.* ¶¶ 55-62); against all defendants for trade secret misappropriation under N.C. Gen. Stat. § 66-152 (second claim, *id.* ¶¶ 63-70), trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1) (third claim, *id.* ¶¶ 71-77), trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (fourth claim, *id.* ¶¶ 78-82), unfair and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* (fifth claim, *id.* ¶¶ 83-91), common law unfair competition (sixth claim, *id.* ¶¶ 92-98), and civil conspiracy (seventh claim, *id.* ¶¶ 99-102); and against Terramix for breach of contract (eighth claim, *id.* ¶¶ 103-109).

Defendants answered and counterclaimed on 19 August 2009 (*see* D.E. 101), and filed an amended counterclaim with leave of court on 1 November 2010 (D.E. 325). Plaintiff filed an answer to defendants' amended counterclaim (D.E. 336) denying its material allegations.

---

[3] The original complaint (D.E. 1) misidentified S&B (*see* D.E. 20) and the court granted plaintiff leave to amend the complaint to correct the error (D.E. 23). Plaintiff filed an amended complaint on 29 May 2009 (D.E. 24) and then a corrected version of it (D.E. 25) on 1 June 2009.

In the meantime, on 17 September 2009, the parties held their mandatory planning meeting under Rule 26(f). (*See* Order for Discovery Plan (D.E. 102)); Fed. R. Civ. P. 26(d)(1). The court entered its Scheduling Order (D.E. 123; amended by, *e.g.*, D.E. 168, 207, 301, 303, 344) on 3 November 2009.

At defendants' request (*see* Defs.' Rule 26(f) Rept. (D.E. 107) 3-4) and over plaintiff's objection (*see* Plf.'s Proposed Addns. to Jt. Rule 26(f) Rept. (D.E. 106) 2-6), the Scheduling Order set forth a procedure to be followed for discovery relating to plaintiff's claims of trade secret misappropriation. (Sched. Order ¶ 3). Specifically, before allowing unrestricted discovery, the Scheduling Order permitted defendants to serve on plaintiff an interrogatory seeking a description, in the form of a list, of each trade secret plaintiff contends defendants misappropriated. (*Id.* ¶ 3.a). Plaintiff was permitted 30 days from the date of service of the interrogatory in which to serve the verified list of trade secrets. (*Id.* ¶ 3.b). If defendants objected to plaintiff's list, they were required to file a motion seeking relief within two weeks after service of the list. (*Id.* ¶ 3.c). Discovery regarding plaintiff's trade secret misappropriation claims could commence only after expiration of the deadline for a motion for relief by defendants, if no motion was filed, or after the court's ruling, if a motion was filed. (*Id.* ¶ 3.e).

Pursuant to this procedure, Weih served an interrogatory[4] on plaintiff on 13 November 2009 (Interr. (D.E. 186-1) 2) and plaintiff served its response (the "Initial List") (D.E. 186-1) on 19

[4] The interrogatory read: "Describe, in the form of a list, each and every trade secret of LORD in the field of rubber-to-substrate bonding to which Weih had access and for each of those trade secrets identify those which you contend the Defendants misappropriated, whether individually or collectively. For each trade secret described, please clearly and specifically separate the described trade secret from matters of general knowledge in the field of rubber-to-substrate bonding (including, but not limited to, published patents and patent applications, books, articles, academic publications, product specifications, Material Safety Data Sheets, websites, catalogs and advertisements of commercially-available materials) and please clearly and specifically separate the described trade secret from matters of special knowledge of those persons skilled in the art of rubber-to-substrate bonding." (Interr. 2).

December 2009. Plaintiff's Director of Chemical Technology, Brian Dean ("Dean"), verified the Initial List. (*Id.* 23). On 11 January 2010, defendants filed a motion to compel (D.E. 134) that challenged the sufficiency of the Initial List. By order entered 2 February 2010 (D.E. 145) ("Supplementation Order"), the court allowed the motion and directed plaintiff to supplement this list, which it did by serving a supplemental response (D.E. 186-2) (the "Supplemental List")[5] on 16 February 2010. Dean verified the Supplemental List. (*Id.* 52). Defendants did not challenge the sufficiency of the Supplemental List pursuant to the procedure in the Scheduling Order. Therefore, pursuant to the terms of that order, unrestricted discovery on the trade secret misappropriation claims began on 2 March 2010.

As part of such discovery, defendants took the deposition of Dean on 16 March 2010. (*See* Dean Dep. Transcript (D.E. 186-4)). At his deposition, Dean was generally unable to provide complete, if any, substantive information regarding many of the purported trade secrets that were the subject of the Initial and Supplemental Lists he had verified, although he did maintain that the listed items constituted trade secrets.

## DISCUSSION

## I. OVERVIEW OF DEFENDANTS' MOTION

By their motion, defendants seek dismissal of five of plaintiff's eight claims: the first claim for breach of employment agreement, second claim for trade secret misappropriation, fifth claim for unfair and deceptive trade practices, sixth claim for common law unfair competition, and seventh claim for civil conspiracy (collectively "subject claims"). The general rationale underlying the motion is that by the Scheduling Order the court determined that the Amended Complaint did not

[5] The Initial List and Supplemental List are at time referred to herein collectively as the "Lists."

adequately describe the trade secrets plaintiff claims defendants misappropriated; to remedy this pleading deficiency, the Scheduling Order directed plaintiff to provide further descriptions of the trade secrets to defendants through use of an interrogatory; in violation of the Scheduling Order, plaintiff did not provide the requisite descriptions in its Initial List, necessitating issuance of the Supplementation Order and resulting in plaintiff's service of the Supplemental List; the inability of Dean, as the verifier of the Initial and Supplemental Lists, to provide at his deposition adequate information regarding the alleged trade secrets described in the Lists discredits the Lists as sufficient descriptions of the trade secrets; by discrediting the Lists and itself providing inadequate information about the alleged trade secrets, Dean's deposition testimony also conclusively establishes that plaintiff is unable to adequately prove that the alleged trade secrets qualify as such; because he was unfamiliar with the alleged trade secrets set out in the Lists, Dean's verification of the Lists violated the Federal Civil Rules and the Scheduling and Supplementation Orders; and subsequent Rule 30(b)(6) depositions of plaintiff,[6] submitted in support defendants' supplemental memorandum, further show that plaintiff cannot prove its alleged trade secrets qualify as such or that defendants misappropriated them and that plaintiff did not adequately investigate the validity of its trade secrets before verifying the Lists.

Drawing on elements of this rationale, defendants seek as their principal relief dismissal of the subject claims pursuant to Rule 12(c) based on Dean's testimony, supplemented by Rule 30(b)(6) deposition testimony of plaintiff, purportedly showing that plaintiff cannot adequately prove the validity of the alleged trade secrets. As one of two alternative forms of relief, they seek dismissal

---

[6] The persons testifying at these depositions were Patrick Warren (*see* D.E. 349-7) and Patrick Bier (*see* D.E. 349-8).

of the subject claims pursuant to Rule 41(b) on the grounds that plaintiff violated the Scheduling and Supplementation Orders by not adequately describing its claimed trade secrets in the Original and Supplemental Lists or properly verifying them. As a second alternative, defendants request that the court strike plaintiff's Initial and Supplemental Lists pursuant to Rule 37(b) for the alleged improper verification and then dismiss the subject claims pursuant to Rule 12(c) for lack of an adequate description of plaintiff's trade secrets. The court will examine each of these three requests for relief in turn after reviewing applicable legal principles.

## II. APPLICABLE LEGAL PRINCIPLES

### A. Rule 12(c)

Defendants' motion for judgment on the pleadings is brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings pursuant to Rule 12(c) is intended to test the legal sufficiency of the complaint." *Great Divide Ins. Co. v. Midnight Rodeo, Inc.*, 5:08-CV-204-F, 2010 WL 2077162, at *2 (E.D.N.C. 24 May 2010); *Integon Gen. Ins. Corp. v. Bartkowiak*, No. 7:09-cv-3045, 2010 WL 4156471, at *2 (D.S.C. 19 Oct. 2010) (noting that Rule 12(c) motion is intended to "dispos[e] of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further") (citing Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* §1368 (3d ed. 2010)).

In reviewing a motion for judgment on the pleadings under Rule 12(c), the court applies the same standard as is applied to a Rule 12(b)(6) motion for dismissal of claims for failure to state a claim upon which relief can be granted. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 410,

405-06 (4th Cir. 2002). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or 'naked assertion[s]' devoid of 'further factual enhancement.'" *See Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In analyzing a Rule 12(c) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "'Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party,' indicate that the dispute 'can . . . be "decided as a matter of law."'" *Colonial Beach Yacht Ctr., Inc. v. United States*, 700 F. Supp. 2d 774, 777 (E.D. Va. 2010) (quoting *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000)).

A court may consider only the pleadings and any documents incorporated into or attached to the pleadings in evaluating a Rule 12(c) motion. *Integon*, 2010 WL 4156471, at *2; *see also Colonial Trading, LLC v. Basset Furniture Indus.*, No. 5:09CV43, 2010 WL 5071174, at *2 (W.D.N.C. 7 Dec. 2010) ("In determining a motion for judgment on the pleadings, the court 'may consider documents incorporated by reference in the pleadings.'") (quoting *Parks v. Alteon, Inc.*, 161 F. Supp. 2d 645, 649 n.1 (M.D.N.C. 2001)). Consideration of extraneous matter converts the motion to one for summary judgment. *Eagle Nation, Inc. v. Market Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001) ("For purposes of this [Rule 12(c)] motion, the court cannot consider materials outside the pleadings without converting the motion to one for summary judgment.").

**B. Rule 41(b)**

Rule 41(b) provides a defendant a remedy for a plaintiff's failure to prosecute its case or comply with court orders by authorizing dismissal of a case or any claim for such conduct. *See* Fed. R. Civ. P. 41(b). A dismissal pursuant to Rule 41(b) generally "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). The Fourth Circuit instructs that dismissal with prejudice under Rule 41(b) is a harsh sanction not to be invoked lightly. *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978).

In deciding whether to dismiss claims with prejudice pursuant to Rule 41(b) for failure to comply with a court order, the court may consider the following factors: "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that . . . [courts] seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable

persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest." *Bryant-Bunch v. Northampton Cnty.*, No. 2:05-CV-34-D(2), 2006 WL 4500055, at *2 (E.D.N.C.15 Jun. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462-63 (4th Cir. 1993)).

### C. Rule 37(b)

Rule 37 governs the failure to participate in discovery as required. Rule 37(b) applies where there has been a failure to comply with a discovery order. Fed. R. Civ. P. 37(b). It authorizes the court to issue "further just orders" to address such non-compliance and provides a non-exhaustive list of possible sanctions, including striking pleadings in whole or in part, and dismissing the action in whole or part. *Id.* 37(b)(2)(A)(iii), (v); *see also Hatchcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995). The choice of sanctions imposed is within the court's broad discretion. *See, e.g., Hathcock*, 53 F .3d at 39-40; *Powell v. Town of Sharpsburg*, No. 4:06-CV-117-F, 2009 WL 1810144, at *1 (E.D.N.C. 19 June 2009).

## III. DISMISSAL UNDER RULE 12(c) BASED ON DEAN'S TESTIMONY

As indicated, the principal relief defendants seek is dismissal pursuant to Rule 12(c) on the theory that Dean's deposition, as supplemented by Rule 30(b)(6) deposition testimony of plaintiff, establishes that plaintiff cannot adequately prove the validity of its trade secrets. At virtually every turn, this theory fails.

One manifest flaw in defendants' motion is that it relies on materials outside the pleadings. These materials are not limited to Dean's testimony, the Rule 30(b)(6) testimony of plaintiff, and the Initial and Supplemental Lists, but encompass a host of other materials that defendants contend show the inadequacy of plaintiff's trade secret descriptions, including corporate publications, encyclopedia

articles, and correspondence among counsel in this case. Under the authorities previously discussed, none of these materials are the type that may be considered without converting the motion to one for summary judgment.

The court rejects specifically any notion that the Initial and Supplemental Lists may properly be considered because the court ordered them to be prepared to address deficiencies in the Amended Complaint and they are therefore tantamount to amendments to the Amended Complaint. As discussed below, the Scheduling Order, along with the Supplementation Order, contained no finding of any deficiency in the descriptions in the Amended Complaint, but was instead grounded in the court's authority to control the sequence of discovery.

Defendants have not, of course, requested that their motion be converted to one for summary judgment, and the court declines to do so. At the time the motion was filed, discovery was still in its early stages. Summary judgment would clearly have been premature on that record. Although some subsequently acquired discovery materials have since been filed in the proceedings on this motion, conversion would require complete rebriefing of the motion to ensure that all relevant discovery was included. Moreover, defendants have since filed motions for partial summary judgment challenging each of the subject claims, actually relying in part on the same Rule 30(b)(6) depositions they use to support their supplemental memorandum on the present motion. (*See* D.E. 353 (first claim), D.E. 355 (second claim); D.E. 357 (fifth, sixth, and seventh claims)). Therefore, conversion is inappropriate. As a consequence, the court will not consider Dean's deposition or any of the other extraneous materials in evaluating the principal relief defendants seek.

Even if the Dean deposition were considered, it would not have the effect defendants allege. They contend, in part, that Dean's testimony binds plaintiff as if he had been testifying on its behalf

as plaintiff's designee pursuant to Rule 30(b)(6) and shows that plaintiff lacks information needed to support its trade secret claims. But defendants did not depose Dean pursuant to Rule 30(b)(6), but instead in his individual capacity, pursuant to Rule 30(a)(1). He therefore was not testifying on behalf of plaintiff at his deposition. Accordingly, his lack of information about the trade secrets was not tantamount to lack of information on the part of plaintiff. Nor, as defendants apparently argue, does Dean's testimony have the effect of a judicial admission and preclude the consideration of any evidence countering Dean's testimony. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 212 (E.D. Pa. 2008) (holding that testimony of a Rule 30(b)(6) representative of a party is not a judicial admission absolutely binding on the party); *United States v. Taylor*, 166 F.R.D. 356, 362 n.6 (M.D.N.C. 1996) (same).

While the testimony at the Rule 30(b)(6) depositions of plaintiff was, of course, given on its behalf, that testimony, like Dean's deposition testimony, does not have the effect of a judicial admission. In any event, the Rule 30(b)(6) testimony is, as indicated, not properly considered on this portion of defendants' motion and the effect, if any, of the substance of that testimony on the subject claims is before the court on defendants' summary judgment motions.

Another fundamental flaw in defendants' principal request for relief is the underlying assumption that the Scheduling Order has already found the Amended Complaint not to adequately describe plaintiff's alleged trade secrets and that the validity of the trade secret claims therefore depends on the sufficiency of the descriptions in Dean's deposition testimony, as well as those in the Initial and Supplemental Lists and the Rule 30(b)(6) depositions. In fact, the Scheduling Order contains no such finding. Instead, it permitted defendants to serve an interrogatory seeking further description of plaintiff's alleged trade secrets pursuant to the court's authority under Rule 26(d)(2)

to direct the sequence of discovery. The court explained: "[T]he court finds that it is appropriate and consistent with the applicable case law that a plaintiff be required to disclose the trade secrets it contends defendants have misappropriated prior to conducting unrestricted discovery on misappropriation claims." (Sched. Order ¶ 3.a) (citing *Silicon Knights, Inc. v. Epic Games, Inc.*, 5:07-CV-275-D, 2008 WL 2414046, at *8-9 (E.D.N.C. 13 June 2008)). As reflected in the court's ruling, defendants had litigated the issue of providing further descriptions of plaintiff's alleged trade secrets in terms of the sequencing of discovery, not amendment of the Amended Complaint. (*See* Defs.' Mem. Supporting Rule 26(f) Rept. (D.E. 107-1) 1-9; Defs.' Mem. Opposing Plf.'s Rule 26(f) Rept. (D.E. 109) 1-8). The focus of the Supplementation Order was similarly on discovery, not pleading, issues. (*See* Supp. Order ¶¶ 3, 4).

Contrary to defendants' erroneous assumption, the descriptions of the trade secrets in the Amended Complaint are sufficient to survive a challenge under Rule 12(c). "To plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *ACS Partners, LLC v. Americon Group, Inc.*, No. 3:09cv464-RJC-DSC, 2010 WL 883663, at *10 (W.D.N.C. 5 Mar. 2010) (citing *Visionair v. James*, 167 N.C. App. 504, 510-11, 606 S.E.2d 359, 364 (2004)). A plaintiff is not required to plead a trade secret misappropriation claim with specificity. *Eli Research, Inc. v. United Commc'n Group, LLC*, 312 F. Supp. 2d 748, 756 (M.D.N.C. 2004).

The Amended Complaint here meets this standard. The trade secrets it identifies include: the "constituent materials" used in Chemlok formulas (Am. Compl. ¶¶ 22, 40, 64); the "exact amounts and proportions used in manufacturing the adhesives" (*Id.* ¶¶ 22, 40); the "methods and

processes utilized by Lord in enhancing and refining the adhesives and their constituent materials" (*Id.* ¶¶ 22, 64); the "improvements that Lord has made to these products over the years in order to enhance their performance" (*Id.* ¶¶ 22, 40, 64); the "methods used by Lord in consulting and providing quality control in connection with these adhesives after they were sold to various Lord customers, including its methods of providing technical support to customers and modifying the products to tailor their performance under certain conditions to meet a customer's specific needs" (*Id.* ¶¶ 23, 64); and "the 'know-how' relating to the Lord methods of 'tailoring adhesive products to customers' needs" (*Id.* ¶ 47). The Amended Complaint also alleges the confidential nature of this information, plaintiff's efforts to maintain such confidentiality, and defendants' misappropriation of the trade secrets at issue in developing Kemibond. (*Id.* ¶ 19, 21, 40).

Rulings in similar cases support the conclusion that these allegations describe the claimed trade secrets sufficiently to survive dismissal under Rule 12(c). *See, e.g., ACS Partners*, 2010 WL 883663, at *10 (denying motion to dismiss trade secret misappropriation claim on grounds that complaint was too vague or conclusory where plaintiff had identified "pricing methodology" as a trade secret in its complaint); *Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 135 F. Supp. 2d 722, 727 (M.D.N.C. 2001) (denying dismissal motion challenging as unduly vague alleged trade secrets of "development of toner," "customer technical assistance," and "customer preferences").

This same case law discredits defendants' contention that the description of each trade secret in plaintiff's pleadings was required to clearly separate the trade secret from matters of general knowledge in the field of rubber-to-substrate bonding or of special knowledge of those persons skilled in the art of rubber-to-substrate bonding. The standard they advocate would seemingly

require a plaintiff alleging trade secret misappropriation to prove this aspect of its case in its complaint. They would thus extend a plaintiff's obligations far beyond those imposed by Rule 8(a)(2) and *Iqbal*.

Indeed, the portion of the Amended Complaint reasonably attributable to plaintiff's trade secret misappropriation claim (the second claim) spans about 20 pages (exclusive of 17 pages of exhibits). The Initial List is about 20 pages long and the Supplemental List about 50 pages, almost all single spaced and thereby equivalent to about 140 double-spaced pages. Thus, the descriptions and supporting allegations of plaintiff's alleged trade secrets already consume over 160 double-spaced pages. Yet defendants contend that this is not sufficient to meet pleading requirements. What they demand can hardly be called "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Notably, defendants did not find the Amended Complaint so vague that it prevented them from serving an answer to it or required them to file a motion for more definite statement.

Defendants' principal request for relief, like the two alternative requests, suffers from another deficiency. While it seeks dismissal of five claims, it addresses only one claim—the second claim for trade secret misappropriation—without explaining the other claims specifically or how they are encompassed by the issues relating to the trade secret misappropriation claim. For this and the other reasons stated, the portion of defendants' motion seeking dismissal pursuant to Rule 12(c) on the basis of Dean's deposition testimony, as supplemented by the Rule 30(b)(6) depositions, should be denied.

## IV. DISMISSAL PURSUANT TO RULE 41(b)

Defendants' alternative request for dismissal under Rule 41(b)[7] fares no better. As indicated, defendants seek dismissal under that provision on the grounds that plaintiff violated the Scheduling and Supplementation Orders by not adequately describing its claimed trade secrets in the Original and Supplemental Lists or properly verifying them.

This request fails, in part, because the verifications by Dean of the Initial and Supplemental Lists were not improper. Rule 33(b)(1)(B) provides that if that party is a public or private corporation, interrogatories may be answered by any officer or agent, who must furnish the information available to the party. Fed. R. Civ. P. 33(b)(1)(B). A corporate representative verifying interrogatory responses is not required to have personal knowledge of the responses. *Shepherd v. American Broad. Cos., Inc.*, 62 F.3d 1469, 1482 (D.C. Cir. 1995) ("Of course, the representative must have a basis for signing the responses and for thereby stating on behalf of the corporation that the responses are accurate. The representative may accomplish this through whatever internal process the corporation has chosen, including discussions with counsel.") (internal citation omitted); *see also Dial v. Travelers Indem. Co.*, 780 F.2d 520, 525 (5th Cir. 1986) (holding it was sufficient where corporate defendant "answered the [plaintiffs'] interrogatories by disclaiming personal knowledge of the facts stated in the answers; however, the answers acknowledged that the persons who provided the facts had stated them to be true"); *Jacob v. City of New York*, No. 07CV04141,

---

[7] A threshold issue presented is whether defendants should be seeking dismissal under Rule 37(b), rather than Rule 41(b), because, according to them, the dispute at issue concerns compliance with orders relating to responses to an interrogatory and compliance with discovery orders is the specific concern of Rule 37(b). *See Rabb v. Amatex Corp.*, 769 F.2d 996, 999 (4th Cir. 1985). The court need not resolve the issue because the standards for dismissal under Rules 41(b) and 37(b) are essentially the same. *Carter v. Univ. of West Virginia Sys.*, No. 93-1905, 1994 WL 192031, at *2 (4th Cir. 16 May 1994) (finding that the standards for a Rule 37(b)(2) dismissal and Rule 41(b) dismissal for failure to obey a discovery order are "virtually the same"); *Ahmed v. Porter*, No. 1:09CV101, 2009 WL 3165459, at *3 (W.D.N.C. 29 Sept. 2009) (noting the similarities between the test for dismissal pursuant to Rule 37(b) and 41(b)).

2009 WL 383752, at *2 (E.D.N.Y. 6 Feb. 2009) (holding it appropriate for agent to verify interrogatories as long as "to the best of his knowledge, the answers are true and contain all information which is available to the corporation" and the agent has "a basis for signing the responses, and thereby state that the responses on behalf of the corporation are accurate"); *O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) ("Thus, an individual party is treated differently than a party that is a business entity; the former must answer interrogatories based on personal knowledge, whereas the latter may answer interrogatories based on available information."). Thus, Dean's admitted reliance on others for the information he verified in the Initial and Supplemental Lists did not violate the applicable Federal Civil Rules provisions and thereby did not violate the directives in the Scheduling and Supplementation Orders that the Lists be verified.[8]

By their supplemental submissions, defendants press the argument that the Rule 30(b)(6) depositions show that plaintiff did not do sufficient investigation prior to verifying the Lists (or thereafter). The court disagrees that the testimony has the sweeping effect alleged. While it may tend to show that plaintiff did not make particular inquiries or use particular language in inquiries it did make, or that plaintiff lacks certain evidence that defendants contend plaintiff needs to support the subject claims, these circumstances are not necessarily attributable to a failure by plaintiff to make a reasonable investigation. Instead, they could plausibly be the product of non-sanctionable causes, including perhaps most notably differences in interpretation of the substantive law governing the subject claims.

---

[8] These orders specified verification pursuant to Rule 33(b)(3) and (5), but, as the parties correctly recognized, that specification did not exclude application of Rule 33(b)(1)(B). (*See* Sched. Order ¶ 3.b; Supp. Order ¶ 1.b).

As to the adequacy of the trade secret descriptions in the Lists, defendants' request for dismissal under Rule 41(b) also fails.[9] Defendants have not shown the type of aggravated conduct and related circumstances that warrant the harsh dismissal sanction. Applying the considerations recognized in the authorities previously discussed, the court finds that the record before it shows no bad faith by plaintiff in connection with the Lists. It did not refuse to provide either the Initial or Supplemental Lists and, in fact, served them both timely. Plaintiff has not otherwise been shown to have engaged in any flagrant or willful disregard of court directives with respect to the Lists.

Indeed, defendants themselves acknowledged the sufficiency of the descriptions in the Initial List in the motion to compel they filed in response to it, complaining only that too few products had been addressed. They stated: "In its Verified Response [*i.e.*, the Initial List], Plaintiff provided a sufficiently detailed list of alleged trade secrets relating to two of its products . . . . However, Plaintiff did not provide a similarly detailed list of alleged trade secrets relating to any other Chemlok primers or adhesives."[10] (Defs.' Mot. to Compel (D.E. 134) ¶¶ 30, 31). After plaintiff produced the Supplemental List addressing the other products, they asserted no objections to it as the Supplementation Order expressly permitted them to do. Instead, they apparently found the Supplemental List sufficient to allow unrestricted discovery on the trade secrets it addressed to

---

[9] Defendants assume that deficiencies in the trade secret descriptions in the Initial List would constitute violations of the Scheduling Order, although it did not contain a directive to plaintiff addressing specifically the content of its response to the interrogatory the Order permitted defendants to serve. (*See* Sched. Order ¶ 3). In contrast, the Supplementation Order did contain a directive to plaintiff on the content of its response. (Supp. Order ¶ 1.a ("The supplemental response shall be complete when served and shall include specifically any responsive information plaintiff has about trade secret relating to the subject Lord products that it alleges defendants misappropriated."). For purposes of this Memorandum and Recommendation, the court will treat defendants' assumption as correct without deciding the issue.

[10] Based in part on defendants' representation, the court found the trade secret descriptions in the Initial List sufficient to permit unrestricted discovery regarding the alleged misappropriation of those trade secrets and ordered it to proceed. (Supp. Order ¶ 2).

proceed. Nor have defendants since that time filed a motion to compel more complete descriptions of the trade secrets. The absence of prior action by defendants to address the purportedly gross deficiencies in the trade secrets descriptions undercuts as well their contention that they have been prejudiced by the descriptions. Had the harm to them truly been significant, one would have expected them to act sooner than they did. Moreover, any prejudice they did suffer was presumably increased by their own decision not to act sooner.

As in the past, there remain means available to defendants other than dismissal to seek relief from the deficiencies as they portray them, most notably a motion to compel. The availability to defendants of other avenues of relief further shows the inappropriateness of dismissal.

Although defendants cast their contentions in terms of objections to the adequacy of plaintiff's trade secret descriptions, their arguments appear to relate more directly to the substantive validity of the trade secrets claimed—that is, whether the trade secrets as described qualify as such under the law. That issue is not one of discovery, but is at the core of the merits of the case. If resolution of that issue is to be sought before trial, a motion for summary judgment appears to be an infinitely more suitable vehicle than a Rule 41(b) sanctions motion. And, indeed, as previously noted, defendants have now filed motions seeking partial summary judgment on all of the subject claims. For this and the other reasons stated, defendants' alternative request for dismissal under Rule 41(b) should be denied.

## V. DISMISSAL PURSUANT TO RULE 12(c) BASED ON STRIKING OF THE INITIAL AND SUPPLEMENTAL TRADE SECRET LISTS UNDER RULE 37(b)

The other alternative request for relief by defendants can be disposed of quickly. By that request, defendants ask that the court strike plaintiff's Initial and Supplemental Lists pursuant to the

"just orders" provision of Rule 37(b)(2)(A) for the alleged improper verification of the Lists and then dismiss the subject claims pursuant to Rule 12(c) due to the lack of an adequate description of plaintiff's trade secrets.

As previously discussed, the verifications of the Lists are not improper and therefore defendants have shown no basis for having the Lists stricken. Even if the verifications were somehow deficient, it is doubtful that striking the Lists would be appropriate given the absence of a showing of aggravated circumstances and the implications of striking the Lists for plaintiff's trade secret claim.

The related request for dismissal under Rule 12(c) is similarly baseless. It rests on the notion that the Lists somehow operate as an amendment to the Amended Complaint and that striking them would therefore subject the Amended Complaint to dismissal. But, as previously discussed, the Lists do not operate as an amendment to the Amended Complaint. As also previously discussed, the Amended Complaint describes the alleged trade secrets sufficiently to survive challenge under Rule 12(c), irrespective of the Lists. Defendants' alternative request for dismissal based on the striking of the Lists should accordingly be denied. Because the other requests for relief in the motion are also meritless, the motion should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendants' motion to dismiss and for appropriate relief (D.E. 186) be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo

review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

Because this Order contains information that may be considered confidential by a party, the Clerk is directed to file it under temporary seal. Any party wishing this Order to remain under permanent seal shall file a motion seeking such relief by 18 January 2011. Any response to such a motion shall be filed by 25 January 2011. In the event no party files a motion to permanently seal this Order by 18 January 2011, the Clerk shall unseal it without further order of the court. In the event a motion to seal is timely filed, this Order shall remain under temporary seal pending ruling on the motion.

SO ORDERED, this 4th day of January 2011.

James E. Gates
United States Magistrate Judge